# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SLEASH, LLC**, a Colorado Limited Liability Company, | Case No. 3:14-cv-00863-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ONE PET PLANET, LLC**, an Oregon Limited Liability Company; **AMAZING PET PRODUCTS**, an Oregon Limited Liability Company; and **CHOO CHOO IMPORTS, LLC**, an Oregon Limited Liability Company, | |
| Defendants. | |

Stephen B. Mosier and Thomas J. Rossa, HAYES SOLOWAY P.C., 4640 E. Skyline Drive, Tucson, AZ 85718; Johnathan E. Mansfield, MANSFIELD LAW, 121 S.W. Morrison, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

David S. Aman and Eric Beach, TONKON TORP LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Sleash, LLC ("Plaintiff" or "Sleash") alleges that Defendant One Pet Planet, LLC ("OPP") no longer has the right to use Sleash's registered trademarks Sleash® and Slinger®. Under a license agreement with Sleash, OPP either still has, or at least once had, a contractual right to use licensed technology and trademarks owned and developed by Sleash related to the market for pet specialty products. Sleash alleges in its verified supplemental complaint that it terminated the license agreement between the parties effective August 1, 2014,

based on OPP's material breach. On August 8, 2014, Sleash filed a motion for a temporary

restraining order ("TRO") and a preliminary injunction, requesting that the Court enjoin OPP and

its related companies, Amazing Pet Products and Choo Choo Imports, LLC, (collectively

"Defendants") from: (1) offering for sale or selling anywhere in the United States of America

any and all plush toy or disc and disc-like products under or bearing the trademark Slinger®, or

any similar mark, or in association with Plaintiff Sleash; and (2) marketing or advertising in the

United States, or transporting into or out of the United States, any plush toy or disc and disc-like

products under the trademark Slinger®, or any similar mark, or in association with Plaintiff

Sleash. For the reasons stated below, the Court denies Sleash's motion.

## BACKGROUND

### A.  Before the Supplemental Complaint

In 2010, Joseph A. Buescher ("Buescher") and Michael A. Saber ("Saber") invented a

dog toy system called "Slinger." As a part of that system, Buescher and Saber invented a "wand"

or "arm" (the "Arm System") that is configured with a handle at one end and a structure at the

other end to fit into a pocket fastened to a dog toy. Buescher and Saber designed the Arm System

to work in combination with specific dog toys, including a ball, a disc-like device, and various

plush toys. Buescher and Saber specifically designed these toys with shape, material, and

manufacturing processes in mind. Buescher and Saber formed Sleash in the spring of 2010 to

market and sell the Arm System and associated dog toys (collectively "Sleash Pet Specialty

Products").

In June of 2012, Michael Laskey ("Laskey"), a businessman in the pet products market

segment and an investor in OPP, introduced Buescher and Saber to Michael Twain ("Twain"),

the manager and owner of OPP. On December 28, 2012, after extensive negotiations, OPP and

Sleash entered into an agreement (the "License Agreement") that granted OPP the authority to

manufacture and sell the Sleash Pet Specialty Products. OPP and Sleash worked to develop the Sleash Pet Specialty Products for market release through approximately April of 2014. On April 18, 2014, OPP sent written notice to OPP terminating the License Agreement.

On May 28, 2014, Sleash filed its initial complaint, alleging trademark infringement and filed an *ex parte* motion for a TRO and preliminary injunction. Sleash alleged in its initial complaint that OPP no longer had the right to use Sleash's registered trademarks Sleash® and Slinger®. Sleash requested that the Court enter a TRO and preliminary injunction prohibiting Defendants from selling plush, disc, and disc-like dog toy products bearing the trademark "Slinger®," shipping out of the United States any such products bearing the trademark "Slinger®," operating the website www.slingertoy.com that promotes the sale of such products, and shipping any and all products allegedly falsely marked with patent numbers.

The Court denied Sleash's motion for a TRO on May 30, 2014. The Court permitted the parties to conduct limited discovery related to Sleash's motion for a preliminary injunction. On June 9, 10, and 11, 2014, the Court held a three-day evidentiary hearing. On August 7, 2014, the Court denied Sleash's motion for a preliminary injunction. The Court reasoned that Sleash was unlikely to succeed on the merits of its trademark infringement claim because Sleash did not properly terminate the License Agreement and because OPP was operating with the scope of the License Agreement. The Court also reasoned that there were not serious questions going to the merits and that the balance of hardships did not tip sharply in Sleash's favor.

**B.  Sleash's Verified Supplemental Complaint**

On August 8, 2014, Sleash filed a verified supplemental complaint alleging that it terminated the License Agreement. Sleash alleges that after May 28, 2014, when Sleash filed its initial complaint against OPP, OPP continued to market and sell Sleash Pet Specialty Products without receiving Sleash's approval of the quality and materials used in the plush and disc-like

toy products. On June 13, 2014, Sleash sent OPP a formal "Notice of Breach" letter that Sleash alleges is consistent with the requirements of the License Agreement. In particular, Sleash identified four provisions of the License Agreement that OPP was allegedly in material breach of, and specific material breaches related to the plush toys, the disc-like toys, and as to all plush and disc-like toy products.

On July 19, 2014, OPP sent Sleash a formal response to the "Notice of Breach" letter. OPP stated in its letter that it was in compliance with the commercially reasonable quality standards required by the License Agreement, with Section 5.4 of the License Agreement relating to the materials used in the Sleash Pet Specialty Products, and was otherwise satisfying its obligations under the License Agreement. OPP also responded that it believed Sleash was in breach of Section 5.4 of the License Agreement because Sleash was not acting in good faith to reach an agreement on the materials used. OPP responded that "unless Sleash commits in writing to operating in good faith under the terms of the License Agreement by no later than August 8, 2014," OPP would make "materials decisions and design change decisions without Sleash's input or approval." OPP also stated that it believed Sleash may have breached Section 13 of the License Agreement by sharing confidential information with a third party. OPP noted that using the materials that were listed on the original specification sheet Sleash gave to OPP during the course of negotiating the License Agreement would make producing the Sleash Pet Specialty Products prohibitively expensive. Using these materials, OPP estimated the following suggested retail prices: the flying disc product would cost $49.69; the duck and pig plush toy products would cost $22.77; and the bone and newspaper plush toy products would cost $16.56.

Sleash responded to OPP on July 29, 2014. Sleash rejected OPP's accusations that Sleash was in breach of the License Agreement. Sleash also reiterated its belief that OPP's sale of the

plush and disc-like toy products constituted a breach of the License Agreement. On August 1, 2014, Sleash sent OPP a "Notice of Termination," explaining that the June 13, 2014 "Notice of Breach" letter provided OPP with the notice of breach and opportunity to cure as required by Sections 10.3 and 20 of the License Agreement. Sleash further explained that July 31, 2014 was the 45th day after OPP's receipt of Sleash's "Notice Letter." As of July 31, 2014, Sleash assets, OPP had not cured the alleged breaches of the License Agreement. Accordingly, Sleash maintains that it formally and effectively terminated the License Agreement.

## STANDARDS

Rule 65(b) of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116(a) of the Lanham Act provide that a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).

Courts apply the preliminary injunction factors in deciding whether to grant a TRO. *See Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Cottrell*).

## DISCUSSION

### A.  Likelihood of Success on the Merits

Sleash requests that the Court enter a TRO and preliminary injunction, arguing that Sleash properly terminated the License Agreement thereby extinguishing OPP's right to use Sleash's intellectual property. OPP does not generally dispute that Sleash gave proper notice of the allegedly material breach as prescribed by the License Agreement. Sleash, however, may only terminate the License Agreement "in the event the other Party [OPP] materially breaches any of the covenants, terms or conditions in [the License Agreement] and fails to cure that breach within 45 days of the written notice of such breach." License Agreement, § 10.3(b). Therefore, whether the License Agreement still permits OPP's sale of Sleash Pet Specialty Products depends on whether Sleash is correct that OPP was in material breach of the License Agreement.

To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc.*

*Workers*, 144 Or. App. 565, 570 (1996) (citation and quotation marks omitted). Only "a *material* breach entitles a party to rescind a contract." *McPherson v. Dauenhauer*, 187 Or. App. 551, 560 (2003) (emphasis in original); *see also* Restatement (Second) of Contracts § 237 cmt. d (1981) ("The considerations in determining whether performance is substantial are those . . . for determining whether a failure is material."). "A breach is material if it goes to the substance of the contract and defeats the object of the parties' entering into the contract." *Commerce Mortgage Co. v. Indus. Park Co.*, 101 Or. App. 345, 349 (1990). A court addressing whether a breach is material should consider:

> (1) the extent to which the injured party will obtain a substantial benefit which he reasonably could have anticipated; (2) the extent to which the injured party may be adequately compensated in damages for the lack of complete performance, and (3) the wilful, negligent or innocent behavior of the party failing to perform.

*Id.*

Whether a breach is material is ordinarily a question of fact for the jury. *Wasserburger v. American Sci. Chem.*, 267 Or. 77, 82 (1973). "It is possible for a breach to be material as a matter of law," however, where "the uncontested evidence is consistent only with the idea of a material breach." *Commerce Mortgage*, 101 Or. App. at 349.

Sleash alleges material breach of the License Agreement based on allegations related to Sections 2.2 and 5.4 of the License Agreement. Specifically, Sleash contends that OPP did not use commercially reasonable quality standards (Section 2.2) and did not seek Sleash's joint approval of the materials used in the Sleash Pet Specialty Products (Section 5.4). Sleash contends that as early as February 6, 2014, OPP commenced its marketing and sales of the unapproved Slinger-branded plush and disc-like toy products.

OPP responds that it was not in material breach of the License Agreement because it followed commercially reasonable quality standards as prescribed by Section 2.2 of the License

Agreement and worked in good faith to get the joint approval of Sleash with regard to the materials used in the Sleash Pet Specialty Products pursuant to Section 5.4 of the License Agreement. OPP further contends that it was Sleash that first materially breach the License Agreement by failing in good faith jointly to approve the materials used in the Sleash Pet Specialty Products. In particular, OPP alleges that Sleash's strategy in continually rejecting OPP's samples was to withhold approval indefinitely in order to terminate the License Agreement. OPP alleges that Sleash's ulterior motive all along was to enter a new license agreement with a third-party company (referred to in this Opinion and Order as "Acme" in order to protect Sleash's confidential and competitively sensitive information).

### 1.  Quality Standards under Section 2.2 of the License Agreement

Section 2.2 of the License Agreement provides in relevant part: "Licensee agrees to maintain *commercially reasonable quality standards* as shall be prescribed by Licensor in writing *or as otherwise reasonable under the circumstances in the conduct of the business operations* with which the Licensed Marks are used." (emphasis added). As the Court discussed in its previous Opinion and Order denying Sleash's first motion for a preliminary injunction, "Sleash did not present the Court with evidence that it provided OPP with written notification of commercially reasonable quality standards at any time during the parties' performance under the License Agreement." *Sleash, LLC v. One Pet Planet, LLC*, 2014 WL 3859975, at *18 n.5 (D. Or. Aug. 6, 2014) (*"Sleash I"*). Because of this, "commercially reasonable quality standards . . . otherwise reasonable under the circumstances in the conduct of the business operations with which the Licensed Marks are used" establishes the quality standards applicable to the Sleash Pet Specialty Products produced by OPP.

Sleash and OPP disagree on the types of materials and quality standards that are commercially reasonable under the circumstances. Sleash contends that OPP is obligated to use

materials from the original specification sheet Sleash provided to OPP or, in the alternative,

identify "A-grade" materials that can be used as a substitute. OPP contends that it used high-

quality materials that are common in the industry and worked hard to improve the quality of the

Sleash Pet Specialty Products. This conflicting evidence means that there is not "uncontested

evidence . . . consistent *only* with the idea of a material breach." *See Commerce Mortgage*, 101

Or. App. at 349 (emphasis added). Therefore, this question of fact requires a jury to evaluate

whether OPP's actions were inconsistent with Section 2.2 and, if so, whether those actions

constituted a material breach of the License Agreement.

### 2. Joint Approval under Section 5.4 of the License Agreement

Section 5.4 of the License Agreement provides: "The Parties will in good faith and within

a reasonable time jointly approve the materials to be used in manufacturing the Licensed

Products." As previously noted by the Court in its analysis regarding the issue of joint approval,

the evidence established that "Sleash did not object to the sale of products that were not 'jointly

approved' with regard to the Arm System and ball toy." *Sleash I* at *19. The Court reasoned that

"the parties used an iterative and interactive process, whereby OPP would send products to

Sleash in accordance with the informal production schedule set by the parties." *Id.* This, in part,

was because the parties were focused on getting the Sleash Pet Specialty Products "promptly into

production" so that Sleash could "collect the royalties contemplated under the License

Agreement." *Id.*

Despite this process and course of dealing, Sleash contends that it had a contractual right

to be consulted by OPP. OPP, however, notes that Twain stated in his testimony during the three-

day evidentiary hearing in June 2014 that he received "oral" permission from Sleash before

February 2014 to produce the disc-like and plush toys. Sleash questions the veracity of Twain's

testimony and argues that OPP's product samples and sales were in violation of the License Agreement. Whether OPP in fact received such approval, however, is in dispute.

OPP also argues that Sleash was in breach of Section 5.4 by engaging in negotiations with Acme for the development of Sleash Pet Specialty Products. OPP contends that Sleash's intent from the beginning was to terminate the License Agreement. Sleash contests this evidence and instead argues that it only began to work with Acme after it was apparent that OPP would not produce the Sleash Pet Specialty Products in a manner Sleash deemed acceptable.

Ultimately, the form of "joint approval" required pursuant to Section 5.4 of the License Agreement is in dispute. Further, the evidence provided by the parties of the existence of joint approval is also in dispute. Thus, there is not "uncontested evidence" that "is consistent only with the idea of a material breach." *See Commerce Mortgage*, 101 Or. App. at 349. Given the conflicting evidence, the Court finds that there is not a likelihood of success on the merits based on Sleash's claim that OPP breached Section 5.4 of the License Agreement.

### 3.  Conclusion Regarding Likelihood of Success of the Merits

There are disputed facts concerning whether OPP has materially breached either Section 2.2 or Section 5.4 of the License Agreement. Given the state of the evidence at this time, Sleash has not established that it is likely to succeed on the merits.

## B.  Irreparable Injury

Courts previously presumed the likelihood of irreparable harm whenever a plaintiff demonstrated a likelihood of success on a trademark or copyright infringement claim. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 525 (9th Cir. 1984), *overruled by Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011). After the Supreme Court's rulings in *Winter* and *eBay Inc. v. MercExchange, L.L.C*, however, that

presumption no longer applies. *Winter*, 555 U.S. at 22; *eBay*, 547 U.S. 388, 393 (2006) (disapproving use of "categorical" rules regarding irreparable harm in patent infringement cases, concluding that such a rule "cannot be squared with the principles of equity adopted by Congress."). As the Ninth Circuit recently held, "the *eBay* principle—that a plaintiff must establish irreparable harm—applies to a preliminary injunction in a trademark case." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). In trademark cases, although "[e]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm," a court making a finding of irreparable harm must ground its analysis in evidence rather than conclusory assertions or speculation. *Id.* at 1250.

Citing *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 724 (9th Cir. 1985), Sleash argued in its first motion for a preliminary injunction that "the loss of control over the movant's name and reputation and loss of goodwill has consistently been held to constitute irreparable injury." Consistent with this argument, Sleash again argues that it will suffer irreparable injury because its "trademark will forever hereafter be associated not with the quality products and materials that [Sleash] quite obviously deems acceptable, but instead, with something lesser, that OPP alone has orchestrated and forced down [Sleash's] throat." OPP responds that Sleash will not suffer irreparable harm and, therefore, a TRO is not justified. In particular, OPP provided evidence from Twain that there is no evidence that OPP is harming the Slinger brand—OPP has received no complaints or refund requests related to the plush and disc-like toy products. OPP also argues that any harm that Sleash may suffer, assuming Sleash had the right to terminate the License Agreement, could be remedied by a damages award. Sleash has not offered any evidence showing a likelihood of irreparable harm.

Rather than providing any such evidence, Sleash argues that such irreparable harm automatically flows from the loss of control of its business and trademark. This argument, however, is inconsistent with *Herb Reed* as the Court cannot rely on conclusory assertions unsupported by evidence. 736 F.3d at 1250. As the Supreme Court clarified in *Winter*, the mere possibility of irreparable harm is not sufficient to justify granting a preliminary injunction. 555 U.S. at 22. Moreover, based on the evidence presented by OPP, the Sleash Pet Specialty Products being marketed by OPP have received positive reviews and OPP has not received a single request for refund request or customer or dealer complaint. Sleash's concern about its brand image appears to be based only on the "remote future injury" that its brand may be diluted by OPP's sales. This is insufficient. *See id.* (rejecting future injuries as a sufficient basis to grant a preliminary injunction) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948.1, p. 139 (2d ed. 1995)). Such a concern also is inconsistent with *Winter*.

Thus, Sleash's motion must be denied because Sleash has failed to present sufficient evidence establishing a likelihood of irreparable harm. *See Herb Reed*, 736 F.3d at 1248-50 (applying *eBay* factors to trademark law).

## C.  Serious Questions on the Merits and Balance of Equities

The Ninth Circuit provides that a "'preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Cottrell*, 632 F.3d at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). The competing evidence from the parties regarding whether OPP was in material breach of the License Agreement raises serious questions on the merits. In particular, if Sleash can establish that it did not give OPP approval for the products released on February 6, 2014, and that Sleash was in full performance and not in breach

of the License Agreement, then Sleash may have sufficient facts to establish that OPP was in material breach. As noted above, however, these facts are in dispute.

Despite serious questions going to the merits, the balance of equities do not tip sharply in favor of either party. Both OPP and Sleash have invested significant amounts of time and money in the development of Sleash Pet Specialty Products. Sleash argues that it must protect the value of its trademarks by using only "A-grade" materials. OPP's continued production of allegedly nonconforming disc-like and plush toys, according to Sleash, damages its brand. This conclusory assertion of irreparable harm, however, as discussed above, is not supported by evidence. *See Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011) (declining to issue a preliminary injunction where the balance of hardships did not tip sharply in the plaintiff's favor because the court did "not have any evidence of reputation or goodwill linked" to the trademark). OPP, on the other hand, has spent almost two years developing the Sleash Pet Specialty Products. OPP argues that if it is forced to stop selling the Sleash Pet Specialty Products, OPP's reputation in the marketplace will be harmed and it will suffer lost sales. Because Sleash established only serious questions and not a likelihood of success on the merits, Sleash must establish that the balance of hardships tips "sharply" in its favor. *See Cottrell*, 632 F.3d at 1135. Sleash has not done so.

## CONCLUSION

Sleash's motion for a TRO and preliminary injunction (Dkt. 34) is denied.

**IT IS SO ORDERED**.

DATED this 15th day of August, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge